UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ELIZABETH R. DONATELLO,

                     Plaintiff,

    v.

COUNTY OF NIAGARA,

                     Defendant.

**DECISION AND ORDER**

15-CV-39A

---

## I. INTRODUCTION

The Hon. Richard J. Arcara referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 9.)  Pending before the Court is a non-dispositive[1] motion (Dkt. No. 13) by plaintiff Elizabeth Donatello ("Donatello") to disqualify the law firm of Bond, Schoeneck & King, PLLC ("Bond") from representing defendant, the County of Niagara (the "County"), in this case.  Donatello wants Bond disqualified based on the attorney-witness rule and a perceived conflict of interest.  According to Donatello, Bond has placed at issue an internal investigation that it conducted for the County when she made allegations of sex-based discrimination.  Bond asserted an affirmative defense to the original complaint that relied on the adequacy of the internal investigation.  Bond, in Donatello's view, also obtained critical facts through the investigation that it used when responding to administrative proceedings and that it disseminated to the

---

[1] "Motions for disqualification of counsel are non-dispositive and are thus subject to the more deferential standard under Rule 72(a)."  *Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc.*, 174 F.R.D. 301, 303 (S.D.N.Y. 1997) (citations omitted).

public.  Donatello thus believes that attorneys at Bond are important witnesses who cannot simultaneously advocate for the County.  Any testimony from Bond attorneys, in turn, could create a conflict with the County's best interests for this litigation.  Donatello concludes that these circumstances warrant disqualification.  The County opposes disqualification by noting that it withdrew its affirmative defenses about the adequacy of the internal investigation when it answered Donatello's amended complaint.  The County also argues that Donatello is confusing an internal investigation conducted for fact-finding with an investigation conducted specifically to avoid liability.

      The Court directed supplemental briefing for questions that it had pertaining to the change in affirmative defenses from the original to the amended complaint.  (Dkt. No. 18.)  The Court thanks the parties for supplemental briefing that proved helpful.  The Court has otherwise deemed the motion submitted on papers under Rule 78(b) of the Federal Rules of Civil Procedure.  For the reasons below, the Court denies the motion without prejudice.

## II. BACKGROUND

      This case concerns allegations that the Niagara County District Attorney's Office (the "Office") discriminates against women through unfair pay and human resource management; through continual comments about women that are sexually degrading; and through retaliation against women who complain.  Donatello joined the Office in 2004.  The record does not contain any allegations

of improper conduct occurring between 2004 and early 2008. In January 2008, Michael Violante ("Violante") took office as the Niagara County District Attorney, and Donatello's allegations coincide with Violante's time in office. Since the pending motion is not a dispositive motion on the merits, the Court will quote just a brief summary of the detailed allegations about Violante's conduct that appear in the amended complaint. "Violante relentlessly demonstrated an inappropriate attitude towards his female subordinates, including Plaintiff. Violante made Plaintiff's work environment unbearable, repeatedly making off-color comments to or about almost all of the women in the office, including Plaintiff. Violante's inappropriate comments and bias against women, and his sexual harassment of Plaintiff and others, has also been evidenced by numerous events and comments." (Dkt. No. 11 at 3.)

    A portion of the procedural history of the case has a more direct bearing on the pending motion. Donatello filed her original complaint on January 12, 2015. (Dkt. No. 1.) In her original complaint, Donatello made no direct mention of any internal investigations into her allegations but did assert that she "has been vocal in objecting to discriminatory behaviors, and has complained both to Mr. Violante and to Human Resources representatives. Despite her complaints, no action has been taken to ameliorate the crude and derogatory behavior and comments and discriminatory policies, which have continued to this date. Defendant has further retaliated against plaintiff for speaking up and asserting her rights." (Dkt. No. 1 at

5.)  The County answered the original complaint on March 16, 2015.  (Dkt. No. 8.)  The answer to the original complaint included the following affirmative defenses:

> Defendant, at all times, exercised good faith efforts to comply with the applicable anti-discrimination laws and other statutes, and reasonably believed its actions involving the Plaintiff did not violate any state, federal or local laws, rules, regulations and/or guidelines.
>
> Defendant established and maintained policies prohibiting discrimination, harassment and retaliation against individuals in categories protected by federal, state, and local laws and a procedure for effective redress and resolution of such matters.
>
> Plaintiff's Complaint is barred, in whole or in part, because Defendant exercised reasonable care to prevent and promptly correct any discriminatory or unlawful conduct, and/or because Plaintiff unreasonably failed to properly take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

(Dkt. No. 8 at 7–8.)  Although the County did not mention the cases by name, the parties do not dispute that these three affirmative defenses constitute a direct invocation of the principles set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) cases that permitted affirmative defenses like the ones quoted above.  On April 2, 2015, on her own initiative, Donatello filed an amended complaint.  (Dkt. No. 11.)  The amended complaint is substantially similar to the original complaint, though it contains additional details about alleged retaliation that Donatello suffered.  The County filed an answer to the amended complaint on April 16, 2015.  (Dkt. No. 12.)  Notably, for purposes of the pending motion, the answer to the amended

4

complaint does not contain the three affirmative defenses quoted above.  The answer to the amended complaint is substantially similar in all other respects.

     Donatello filed the pending motion on April 20, 2015, just four days after the County filed its answer to the amended complaint.  Central to the pending motion is an internal investigation that the County conducted starting in March 2013.  That spring, Donatello retained counsel who detailed her claims of improper behavior to Violante.  The County subsequently retained Bond to investigate Donatello's claims.  The investigation included document reviews and interviews of attorneys and staff who worked in the Office.  The record is not clear as to whether the County's internal investigation led to any formal report, privileged or otherwise.  In the late summer of 2013, according to Donatello, representatives of the County provided information to local media about how the investigation had proceeded up to that point.  When Donatello filed a charge with the Equal Employment Opportunity Commission ("EEOC") in October 2013, Bond responded for the County.  Donatello concludes from the events of 2013 that "[one attorney] and other Bond Schoeneck law firm employees played an essential role in conducting the investigation into Ms. Donatello's charges. Defendant has touted not only the purported adequacy of that investigation in defending the case, but also has asserted to the EEOC, this Court and in proclamations to the public that the investigation has revealed the lack of merit in Plaintiff's case.  Bond Schoeneck lawyers and other staff who assisted in

5

conducting the investigation are accordingly necessary witnesses in the case and may be deposed and/or called to testify at trial." (Dkt. No. 13-1 at 11.)  This conclusion, in turn, prompts Donatello's arguments that only disqualification can avoid both a violation of the attorney-witness rule and testimony that would run contrary to the County's interest in defending the litigation.

In her supplemental briefing, Donatello clarifies why, in her view, the County's internal investigation warrants disqualification even after the withdrawal of the affirmative defenses quoted above.  Donatello "acknowledges the general rule that an amended pleading supersedes and replaces an earlier pleading.  Although defendant may withdraw the *Faragher/Ellerth* defense, it cannot alter the fact that it has, through its actions, made the adequacy and details of the investigation an integral issue in the case."  (Dkt. No. 19 at 3.)  Donatello then cites assertions that the County has made that must have come from privileged facts obtained during an investigation that likely constitutes attorney work product.  Donatello draws two conclusions from these assertions.  First, Donatello argues that the County has waived attorney-client privilege by drawing on its internal investigation to make public assertions against her.  Second, Donatello argues that Bond attorneys are the only witnesses who can provide testimony to substantiate the public assertions that the County has made.  As Donatello has stated, "Defendant's use of the investigation has already prejudiced plaintiff.  The investigation played prominently in defendant's

6

submissions to the EEOC, and its release to the media of purported details and conclusions obtained in the investigation embarrassed and humiliated plaintiff and sent a strong message to prospective witnesses in the case as to the ramifications of opposing defendant.  Prospective witnesses undoubtedly received that message, which will in all likelihood be a strong consideration if and when they are called on to step forward in this case.  That damage has been done and cannot be taken back." (*Id.* at 8.)

The County opposes the pending motion and asserts that disqualification is not necessary.  The County argues that Donatello has not yet shown why testimony from any Bond attorneys would be necessary.  According to the County, Donatello has not identified what facts she needs to prosecute her case that could come only from Bond attorneys.  The County considers Donatello's arguments about conflict of interest too speculative.  Finally, the County argues that its answer to the amended complaint now controls, and that its prior answer to the original complaint has no legal effect.

## III. DISCUSSION

"Whether to grant a motion to disqualify is committed to the discretion of the court.  Such motions are generally viewed with disfavor, and parties moving for disqualification carry a heavy burden and must satisfy a high standard of proof.  This is primarily because disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and because

7

disqualification motions are often interposed for tactical reasons.  At the same time, however, the Second Circuit has instructed that if there are doubts about the matter, those doubts should be resolved in favor of disqualification.  This approach strikes a balance between being solicitous of a client's right freely to choose his counsel, and protecting the need to maintain the highest standards of the profession and the integrity of the adversary process." *Wieme v. Eastman Kodak Co.*, No. 02-CV-6021L, 2004 WL 2271402, at *1–2 (W.D.N.Y. Sept. 7, 2004) (Larimer, *J.*) (internal quotation and editorial marks and citations omitted).

     In reviewing all the motion papers, the Court has noticed that the parties have created a distinction between the procedural and factual components of whatever internal investigation the County conducted.  Donatello seems to view the investigation as an event whose occurrence in itself generated discoverable information that she cannot access—information apart from the witnesses interviewed and the documents reviewed.  Donatello's references to the County's public statements are consistent with this view.  If the County made assertions based solely on information that will come out during ordinary discovery then any discrepancies will become apparent as the case unfolds.  In contrast, if the internal investigation created an *Upjohn*-type[2] situation in which the County is publicly attacking Donatello with privileged information then Donatello may be right to complain about the use of the investigation as a sword and shield.  The

---

[2] *See generally Upjohn Co. v. U.S.*, 449 U.S. 383 (1981).

County, meanwhile, has emphasized the difference between fact-finding and avoiding liability under *Faragher/Ellerth*.  According to the County, the facts that Bond may have uncovered during the internal investigation are facts that will be subject to discovery in the ordinary course.  "Thus, even assuming the *Faragher/Ellerth* defense were asserted in this case, Mr. Rooney would not be in a position to disclose any information that may be prejudicial to the County (if any existed) because the only inquiry about corrective measures would be about the actions taken by the County, not the advice the County received and whether it was followed."  (Dkt. No. 20 at 8.)

      This early in the case, the County has the better view of the internal investigation that occurred.  This case is about alleged sex-based discrimination and retaliation, not about the investigation *per se*.  The parties do not dispute that the answer to the original complaint now is a procedural nullity, and that the County had the right to modify or to withdraw affirmative defenses when it answered the amended complaint.  The question thus becomes whether the internal investigation generated discoverable and relevant information that Donatello cannot access except by invading attorney-client privilege.  Right now, it is too soon to tell.  Donatello filed the pending motion just four days after the answer to the amended complaint.  The pending motion prompted cancellation of the Rule 16 scheduling conference.  No scheduling order thus ever took effect, meaning that no formal discovery has yet occurred.  Discovery in the ordinary

course will lead to depositions of the same witnesses that Bond interviewed and examination of the same documents that Bond procured. If discovery starts to indicate a mismatch between the County's public assertions and the information uncovered by ordinary means then the Court may need to examine what other information Bond has and whether any privilege surrounding that information had been waived. On the other hand, if discovery in the ordinary course simply shows that the County showboated about information that Donatello will receive then there would be no need to chase Bond for privileged information. Disqualification would be far too drastic an action until the case takes further shape during discovery. *Cf. Gormin v. Hubregsen*, No. 08CIV.7674(PGG), 2009 WL 508269, at *3 (S.D.N.Y. Feb. 27, 2009) ("The reality is that at this stage of the litigation, it is impossible to determine how significant [counsel] might be as a witness or whether he is likely even to be called as a witness; whether his testimony would likely hurt or help his client; or whether his testimony would or would not be cumulative of other witnesses. Based on such a record, courts in this District commonly deny disqualification motions.") (citations omitted); *see also McDonald v. Hammons*, 129 F.3d 114 (2d Cir. 1997) ("[T]he propriety of granting or denying a disqualification motion frequently only becomes clear at the conclusion of the underlying litigation.") (citations omitted).

    The Court thus understands Donatello's concern about the factual content of the internal investigation but has to hold that concern in abeyance for now.

The most that the Court can do for now is to deny the motion without prejudice. Bond may proceed to represent the County but is on notice that the course of the case may yet prompt an examination of information that it obtained that Donatello cannot obtain through ordinary means.

### IV.   CONCLUSION

For all the foregoing reasons, the Court denies Donatello's motion (Dkt. No. 13) without prejudice.

The Court will hold a scheduling conference on **February 10, 2016 at 11:00 AM**.  The parties are directed to review Docket No. 10 for instructions about the scheduling conference; they will file any proposed discovery plan in the public docket.

SO ORDERED.

*/s Hugh B. Scott*
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: December 7, 2015