UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ELIZABETH DONATELLO

                    Plaintiff,

   -against-

COUNTY OF NIAGARA

                    Defendant.

---

**SECOND AMENDED COMPLAINT**

Civ. No:15-cv-00039

The Plaintiff, ELIZABETH DONATELLO, by her attorneys Chiacchia & Fleming, LLP, Andrew P. Fleming, Esq., of Counsel, as and for her Amended Complaint against Defendant, COUNTY OF NIAGARA, hereby alleges:

1.    This is an action brought by Plaintiff to recover damages due to Defendant's violation of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law.

2.    Money damages, including back pay, front pay, compensatory damages and other appropriate legal relief are sought pursuant to said statutes.

1

## THE PARTIES

3.  At all times hereinafter mentioned, Plaintiff was and continues to be a resident of the County of Niagara and State of New York. Plaintiff has been employed as an Assistant District Attorney for Defendant.

4.  At all times hereinafter mentioned, and upon information and belief, Defendant, was and continues to be a public entity organized and existing under New York Law, with offices located at the Niagara County Courthouse, 175 Hawley Street, Lockport, New York 14094.

## ADMINISTRATIVE PROCEEDINGS

5.  Plaintiff timely filed a charge of employment discrimination with the Equal Employment Opportunity Commission on or about October 17, 2013.

6.  Plaintiff received her Notice of a Right to Sue from the EEOC on or about October 16, 2014. Plaintiff exhausted her administrative requirements and her Complaint was timely.

7.  On or about June 6, 2014, subsequent to filing her initial employment discrimination charge with the Equal Employment Opportunity Commission, Plaintiff timely filed a charge of retaliation with the EEOC. With respect to that charge, Plaintiff received her Notice of a Right to Sue from the EEOC on or about March 10, 2015. Plaintiff has exhausted her administrative requirements and this Amended Complaint is timely.

## STATEMENT OF CLAIM

8. Plaintiff's employment with Defendant began in 2004. She has been an exemplary employee who has performed the material duties of her occupation as an Assistant District Attorney in a competent and professional manner.

9. In January 2008, Michael Violante ("Violante"), became Defendant's elected District Attorney. Shortly after beginning his first term, Violante moved Plaintiff into a full time Special Victims Unit (SVU) position. Violante was responsible for and oversaw all attorneys in the SVU, including Plaintiff.

### A.   THE OFFICE IS INFECTED WITH AN ATMOSPHERE OF DISCRIMINATION, HARRASSMENT AND DENIGRATION OF WOMEN, INCLUDING CRUDE AND DEGRADING COMMENTS TO PLAINTIFF AND OTHER FEMALE EMPLOYEES

10. From the time Mr. Violante began his tenure as District Attorney, he has created a hostile and unwelcoming atmosphere for women, including plaintiff, by making it clear through words and actions that women were held to a wholly different standard than male employees regarding work obligations and hours and by openly judging women on their appearance, including their weight, hair style and breast size.

11. Violante relentlessly demonstrated an inappropriate attitude towards his female subordinates, including Plaintiff. Violante made Plaintiff's work environment unbearable, repeatedly making off-color comments to or about almost all of the women in the office, including Plaintiff.

12. Violante's inappropriate comments and bias against women, and his sexual harassment of Plaintiff and others, has also been evidenced by numerous events and comments.

3

One such comment occurred in October or November of 2010, when Violante informed Plaintiff that a female co-worker in the office was losing a lot of weight, but not her "boobs," and that the men had noticed it and were talking about it;

13. In November of 2011, Violante entered Plaintiff's office and said: "Why didn't anyone tell me [a co-worker] is black? Don't you think that is something you should have told me so I don't say anything stupid to her?"

14. In late 2011, and through the spring of 2012, Violante told Plaintiff that a co-worker in the office was dressing like a bimbo and wearing "slutty" shoes. Violante then said that only skirts below the knee and conservative shoes were permitted for female attorneys but only enforced the policy for the younger, thinner women. Violante later spread rumors accusing that same co-worker of having an extramarital affair and indicated he was going to fire her if she didn't end it.

15. In November of 2012, Violante told Plaintiff that men didn't have to worry about facelifts and boob jobs. As Violante said this to Plaintiff, he put his arm around her, stared at her chest and said: "Not that you have to worry about getting a boob job," or words to that effect.

16. In December of 2012 or early January 2013, Violante asked Plaintiff if another co-worker had her "boobs done." He told Plaintiff that they looked "higher and fuller."

17. On a number of occasions, Violante said he did not want the women in the office to get pregnant because they take the full maternity leave. He made other comments about women in the office getting pregnant and expressed negative feelings about that.

18. In January of 2013, Violante commented to another employee in plaintiff's presence that the employee looked good, while patting his stomach, adding "You always look

4

good from here up; now from here down is starting to shape up too," or words to that effect, while waving from his neck downward.

19. In January 2013, Violante commented on plaintiff's hair style, after she had her hair cut short, stating "is your hairdresser pissed at you?" When plaintiff mentioned that comment to a female co-worker, she advised that every time she gets her hair cut short, Violante tells her it looks "like shit". Violante continued to comment on plaintiff's hair cut in front of others, including non-employees whom she was meeting in her office.

20. On another occasion, Mr. Violante remarked that a female employee lost so much weight that she was finally beginning to "look like a woman".

21. One particularly offensive comment occurred in in April of 2013, when Violante commented on a case in which an intoxicated, unconscious woman had been raped. Violante commented to Plaintiff "Can you believe we're prosecuting this shit?" He went on to say "that's what boys do; you try to get the girl drunk and then have sex." As she had done on multiple other occasions when similar offensive comments had been made, Plaintiff expressed to Violante her displeasure with his inappropriate comments. On this occasion Violante merely retorted that "Well, I'd try to make sure it was my girlfriend."

### B. THE DISCRIMINATORY BEHAVIOR AND POLICIES NEGATIVELY AFFECTED WORKING CONDITIONS, PAY AND BENEFITS FOR WOMEN EMPLOYEES, INCLUDING PLAINTIFF

22. As one example of his expression of a discriminatory policy, Mr. Violante has vocalized his desire to not hire women who he believes were going to have children, and has

5

frequently 'commented' on his preference that women employees use birth control or have tubal ligations.

23. Whether it involved an inappropriate policy, comment or behavior, at all relevant times, plaintiff has been vocal in objecting to discriminatory behaviors, and has complained both to Mr. Violante and to Human Resources representatives. Despite her complaints, no action has been taken to ameliorate the crude and derogatory behavior and comments and discriminatory policies, which have continued to this date. Defendant has further retaliated against plaintiff for speaking up and asserting her rights.

24. Mr. Violante's discriminatory policies and retaliation are exemplified in the disparity of treatment between plaintiff and a male co-worker. From January of 2008 until recently, Plaintiff and this male co-worker both worked in the SVU and had the same job title and responsibilities prosecuting SVU cases. They reported to the same supervisor.

25. Although the male co-worker had more years on the job, he worked many fewer hours, was frequently late to work, and a substantial portion of his work was shifted over to plaintiff. Plaintiff was consequently forced to work substantially more hours and incur much greater stress and job pressure to handle the added workload.

26. When plaintiff complained that Violante was shifting an unreasonable amount of her male co-workers responsibilities over to plaintiff causing her to have a disproportionate workload with substantially added pressure, Mr. Violante acknowledged the inequity, but refused to take action because he stated that the male co-worker was a single father who had children he needed to care for. Plaintiff pointed out that this co-worker's salary was more than $30,000 greater than hers, which was unfair in light of the inequitable hours and responsibilities that they

6

assumed. In response, however, Violante stated that plaintiff had her husband to her support to her. He thereby refused to equalize their responsibilities or pay.

27. Further, plaintiff's complaints about the inequitable pay and workload resulted in Violante's harsh retaliation against her.

28. On February 27, 2013, Plaintiff met with Violante in his office to again discuss the work overload and to let him know that she needed help. Plaintiff indicated that if her co-worker was in the office on a full-time basis, it would make a difference with the workload. Violante became angry then simply ignored her suggestions and requests.

29. Plaintiff was sick on March 4th and 5th of 2013 and returned to work on March 6th. That day, Violante walked into Plaintiff's office and informed her that her complaints about her co-worker were causing problems in the office. When plaintiff responded that the co-worker's lack of effort was inequitable and was causing criminals to go free, Violante responded that she should look for a new job because she was fired.

30. Later that day, Plaintiff received a hand delivered letter to her home from Violante stating his conditions which would allow Plaintiff to return to work. A meeting was arranged for the following week.

31. At the meeting, Plaintiff was told that Violante would deal with the co-worker in whatever manner he saw fit and Plaintiff would have to accept it. Plaintiff's complaints were not addressed and she was told to stop objecting to the disparate treatment. Since Plaintiff needed her job, and because she wanted to continue to work for the SVU crime victims, Plaintiff agreed to the terms and returned to her duties.

7

32. Following the meeting, plaintiff retained counsel, who promptly communicated plaintiff's concerns and complaints of discriminatory behavior to defendant on or before July 2013. The retention of counsel and plaintiff's further expression that she had and continued to be discriminated against and subjected to an office atmosphere of crude, inappropriate comments and sexual harassment had little or no effect on the behavior of Violante or his on the discriminatory policies he employed.

33. If anything, plaintiff's assertion of her rights angered defendant and prompted harsh retaliation. On or about September 3, 2013, the Niagara Falls Reporter published an article detailing plaintiff's complaints and denigrating plaintiff and her husband. Upon information and belief, information published in the article, much of it which was false and defamatory, was supplied to the publisher by defendant and its agents, despite the fact that the allegations of employment discrimination were personal, private and confidential.

34. On or about October 27, 2013, plaintiff filed a formal charge of discrimination against Niagara County with the Equal Employment Opportunity Commission.

35. Plaintiff continued to dutifully perform her job in a hostile work environment despite the fact she continued to be subjected to degrading and crude comments and unequal treatment. In addition, plaintiff felt ostracized and isolated while continuing to work extra hours and experience the extra stress and pressure of performing the additional duties of her male co-worker. Plaintiff also suffered the additional humiliation associated with defendant's punitive conduct attacking plaintiff and her husband for asserting her rights. Working in an environment which discouraged and even punished her for standing up for her rights under the law, plaintiff experienced extreme stress and emotional suffering.

36. In April 2014, plaintiff suffered a serious medical event which caused her to miss work for an extended period of time. During her extended illness, plaintiff was denied pay and benefits afforded to other employees. Plaintiff was medically released to return to work in October. On her return to the job, plaintiff was removed from her position in the SVU and placed in a job which requires her to travel more extensively and for which she has not been provided adequate support.

37. On or about June 19, 2014, plaintiff filed a further charge of discrimination in that defendant retaliated against plaintiff in response to her assertions of discriminatory behavior and the filing of her initial charges with the EEOC. The ongoing retaliation includes but is not limited to: isolating, mistreating and ostracizing plaintiff through the actions of Violante; being denied a pay increase; being denied accumulations/calculations regarding her paid time off status; being denied long-term, paid sick leave despite the fact that, upon information and belief, at least two (2) similarly situated employees received long term paid leave previously; being sent an inappropriate e-mail by Violante; and, being denied proper representation/defense in a Federal Court action against defendant in which plaintiff is named personally.

38. Plaintiff has been treated differently and unequally, and subjected to sexual harassment, because she is a woman. She was retaliated against for her complaints of gender discrimination and sexual harassment and the retaliation has been punitive and has escalated.

39. The discrimination and retaliation Plaintiff has been subjected to by Defendant was unjustified, and has caused plaintiff to suffer incalculable pain and suffering which has

9

caused her physical and emotional pain and suffering, and has further injured plaintiff professionally and financially.

### FIRST CAUSE OF ACTION-GENDER DISCRIMINATION

40.  Plaintiff repeats and realleges paragraphs "1" through 39" of this Amended Complaint with the same force and effect as if fully set forth herein.

41.  Defendant's actions, as above described, evidence Defendant's discrimination against Plaintiff on the basis of her gender.

42.  Plaintiff has suffered physical and emotional harm as a result of Defendant's actions. The gender discrimination she was subjected to was blatant and unjustified and damaged her physically, mentally and professionally. The gender discrimination she was subjected to violated Title VII of the Civil Rights Act of 1964.

43.  DONATELLO has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief and an award, *inter alia*, of back pay, front pay, and compensatory damages against Defendant, all pursuant to Title VII of the Civil Rights Act of 1964.

44.  Plaintiff has been damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION-SEXUAL HARASSMENT

45.  Plaintiff repeats and realleges paragraphs "1" through 44" of this Amended Complaint with the same force and effect as if fully set forth herein.

46.     Defendant's actions, as above described, evidence Defendant's pervasive and unwelcome sexual harassment of Plaintiff.

47.     Plaintiff has suffered physical and emotional harm as a result of Defendant's actions. The sexual harassment she was subjected to was blatant and unjustified and damaged her physically, mentally and professionally. The sexual harassment she was subjected to violated Title VII of the Civil Rights Act of 1964.

48.     DONATELLO has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief and an award, *inter alia*, of back pay, front pay, and compensatory damages against Defendant, all pursuant to Title VII of the Civil Rights Act of 1964.

49.     Plaintiff has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION-RETALIATION: TITLE VII

50.     Plaintiff repeats and realleges paragraphs "1" through 49" of this Amended Complaint with the same force and effect as if fully set forth herein.

51.     Defendant's actions, as above described, evidence Defendant's retaliation against Plaintiff.

52.     Plaintiff has suffered physical and emotional harm as a result of Defendant's actions. The retaliation she was subjected to was blatant and unjustified and damaged her physically, mentally and professionally. The retaliation she was subjected to violated Title VII of the Civil Rights Act of 1964.

53. DONATELLO has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliation unless and until this Court grants relief and an award, *inter alia*, of back pay, front pay, and compensatory damages against Defendant, all pursuant to Title VII of the Civil Rights Act of 1964.

54. Plaintiff has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION-RETALIATION: NEW YORK STATE HUMAN RIGHTS LAW

55. Plaintiff repeats and realleges paragraphs "1" through 54" of this Amended Complaint with the same force and effect as if fully set forth herein.

56. Pursuant to a Notice of Claim filed by Plaintiff against Defendant pursuant to New York State's General Municipal Law §50-e, Plaintiff asserts that Defendant took retaliatory actions against her from February 5, 2014 through May 5, 2015 in violation of Section 296 of the New York State Human Rights Law.

57. Plaintiff has suffered physical and emotional harm as a result of Defendant's actions. The retaliation she was subjected to was blatant and unjustified and damaged her physically, mentally and professionally. The retaliation she was subjected to violated Section 296 of the New York State Human Rights Law.

58. DONATELLO has suffered, is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliation unless and until this Court grants relief and an award, *inter alia*, of back pay, front pay, and compensatory damages against Defendant, all pursuant to Section 296 of the New York State Human Rights Law.

59.Plaintiff has been damaged in an amount to be determined at trial.

## DEMAND FOR TRIAL BY JURY

60.Plaintiff herein requests a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

(A)An award of damages, including back pay, front pay, and compensatory damages, in such amounts to be determined by the trier of fact on each Cause of Action;

(B)A Declaratory Judgment that Defendant unlawfully discriminated against and sexually harassed Plaintiff in violation of Title VII of the Civil Rights Act of 1964 and retaliated in violation of the New York State Human Rights Law from February 5, 2014 to May 5, 2015; and

(C)An award of costs and disbursements necessary to this action, attorneys' fees, and for such other relief as this Court deems just and proper.

March 21, 2016
Hamburg, New York

/s/ Andrew P. Fleming, Esq.
**CHIACCHIA & FLEMING, LLP**
*Attorneys for Plaintiff*
5113 South Park Avenue
Hamburg, New York 14075
Telephone: (716) 648-3030
aflem@cf-legal.com